UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACQUELINE LORENZI,

                         Plaintiff,

                                 **Hon. Hugh B. Scott**

                v.                                **17CV1273**

                                        **CONSENT**

COMMISSIONER,                        **Order**

                         Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 13 (plaintiff), 16 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 6).

## PROCEDURAL BACKGROUND

The plaintiff ("Jacqueline Lorenzi" or "plaintiff") filed an application for disability insurance benefits on August 21, 2013 [R. 10]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de

novo and concluded, in a written decision dated September 12, 2016, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on October 27, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on December 5, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 13, 16), and plaintiff duly replied (Docket No. 17). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 53-year-old with a high school education, last worked as a data entry clerk and accounts receivable clerk [R. 15, 20]. She contends that she was disabled as of the onset date of January 1, 2012 [R. 10]. Plaintiff alleges a combination of impairments, including plantar fasciitis, diabetes, peripheral neuropathy, bipolar disorder, and anxiety disorder, prevent her from working [R. 15]. Plaintiff claims the following impairments deemed severe by the ALJ: bilateral plantar fasciitis, diabetes, peripheral neuropathy, obesity, affective disorder, generalized anxiety disorder [R. 12]. Plaintiff stopped working when chronic foot pain made her unable to stand for extended periods [R. 15]. As for the claimed obesity, plaintiff was 5'7", 209 pounds when she was examined by consultative internal medical examiner, Dr. Donna Miller, on December 12, 2013 [R. 16, 596]. On December 24, 2015, plaintiff weighed 218 pounds and had a body mass index of 34.14 [R. 1159]. On July 14, 2016, plaintiff testified at the hearing that she weighed 204 pounds and noted that her weight fluctuated, with her greatest weight being 285 pounds [R. 61].

Plaintiff also claimed other ailments, such as sleep apnea, hypertension, varicose veins, residual memory and speech deficits secondary to transient ischemic attack ("TIA"), and thyroid gland showing goiter [R. 13]. The ALJ found that each of these conditions was not severe at Step Two of the five-step analysis [R. 13].

**MEDICAL AND VOCATIONAL EVIDENCE**

Pertinent to this decision, as for plaintiff's TIA and residual memory and speech deficits secondary to TIA, plaintiff's IQ testing showed low average, only slight forgetfulness, slight impairment in judgment and problem-solving, and deficits in multiple domains on dementia testing [R. 13, 767]. On December 24, 2015, plaintiff was found to have mild cognitive impairment and TIA with no residual deficits [R. 13, 1159]. An earlier MRI of her brain found a one-centimeter left ganglia infarct with putamen representing an infarct in the distribution of the lateral lenticulostriate branch of the MCA and mild superior cerebellar atrophy [R. 13, 930]. The ALJ concluded that "because formal testing showed no residual deficits, the claimant's history of transient ischemic attack is non-severe" [R. 13].

At the July 2016 hearing [R. 15-16, 73-74], plaintiff stated that she stopped working because chronic foot pain made her unable to stand for prolonged periods [R. 15, 73-74]. She testified that she could sit or stand for short periods and that she could lift only five pounds [R. 15, 67]. According to the ALJ, the medical record showed conservative treatment for her physical impairments and good response to mental health treatment [R. 15-16]. Since plaintiff worked from 2012 to 2014 and her condition, the ALJ concluded that this "does not support a finding of a combination of impairments of disabling severity" [R. 16].

In December 2013, plaintiff was examined by the consultative psychologist Dr. Susan Santarpia who found plaintiff had controlled panic disorder and anxiety disorder which did not prevent her from performing complex tasks independently [R. 18, 594]. The ALJ gave this opinion great weight and further found that plaintiff had the additional limitation in interacting with others in a work setting [R. 18].

The ALJ found that plaintiff had a residual functional capacity to lift and carry ten pounds occasionally and less than ten pounds frequently. Plaintiff can stand and walk for two hours in an eight-hour workday, sit for six hours during a workday. She cannot climb ropes, ladders, or scaffolds. She can perform all other postural activity occasionally. Plaintiff must avoid extremes of hot and cold, heights, moving machinery, and vibration. Plaintiff can occasionally operate foot controls bilaterally. Plaintiff can have occasional contact with coworkers, supervisors, and the public. [R. 15.]

The ALJ found that plaintiff was able to perform her past relevant work as an accounts receivable clerk or data entry clerk, both sedentary, semiskilled occupations [R. 20]. With this capacity, the vocational expert opined that plaintiff could perform her past work [R. 20]. As a result, the ALJ held that plaintiff was not disabled [R. 20].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past, 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. This case turns on whether the ALJ appropriately considered plaintiff's claimed impairment from her ischemic attack at Step Two of the five-step analysis (Docket No. 13, Pl. Memo. at 12-16). Included with this is whether the ALJ properly considered the evidence and opinions in support of this claimed impairment. Plaintiff contends that the ALJ erred in relying upon psychologist Dr. Susan Santarpia's December 2013 findings because they predate plaintiff's March and December 2014 MRI examinations, which showed transient ischemic attack (Docket No. 13, Pl. Memo. at 16-19).

I.  Step Two

As for impairments consideration at Step Two, plaintiff bears the burden of establishing that he or she has a severe impairment, "which is 'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work,'" Miller v. Berryhill, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017) (Telesca, J.); see 20 C.F.R. § 404.1520(c). An impairment or combination of impairments found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, SSR 85-28, 1985 SSR LEXIS 19 (1985). In this Circuit, this Step Two severity analysis "may do no more than screen out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (see Docket No. 13, Pl. Memo. at 13). Despite this level of screening at Step Two, plaintiff still has the burden to show that her impairments or combination of impairments significantly limited her ability to perform work.

7

Plaintiff argues that she had cognitive deficits secondary to TIA that the ALJ erroneously determined were not severe at Step Two (Docket No. 13, Pl. Memo. at 12). She points to memory difficulties she had, that she had testing for cognitive deficits [R. 925, Oct. 27, 2014], and MRI scanning of her brain [R. 900, Mar. 6, 2014; R. 929-30, Dec. 22, 2014]. On October 27, 2014, plaintiff came to Dent Neurologic Institute for memory issues [R. 925], and she was found to be "positive for memory loss" [R. 926].

Defendant and the ALJ point to a November 13, 2013, examination of plaintiff which found that she had slight forgetfulness, partial recollection of events, and what was termed "'benign' forgetfulness" [R. 767, 13] (Docket No. 16, Def. Memo. at 13-14). Defendant argues that plaintiff's condition has been found to be mild [R. 929-30, 1051, 1159, 1165], therefore not sufficiently severe at Step Two to lead to further disability analysis (Docket No. 16, Def. Memo. at 14).

Given the relatively low threshold for Step Two, e.g., McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014); Palmer v. Berryhill, No. 17CV813, 2019 U.S. Dist. LEXIS 48167, at *15-16 (W.D.N.Y. Mar. 22, 2019) (Telesca, J.), the medical evidence in this record indicates plaintiff suffered mild cognitive impairment and TIA without residual effects [R. 1051, 1159, 1165], while noting her cognitive difficulties [R. 767, 1051]. Both sides debate whether the findings of Dr. Bela Ajtai [R. 1159] and Nurse Practitioner Arial Clay [R. 1051] showed that plaintiff's impairments should be severe (compare Docket No. 16, Def. Memo. at 14 with Docket No. 17, Pl. Reply Memo. at 2). That debate need not be resolved at this Step. The ALJ erred in concluding that this ailment was not severe. Plaintiff's claim is beyond de minimis and should have gone forward. This error is not harmless, cf., e.g., Howard v. Comm'r, 203 F. Supp. 3d

8

282, 297 (W.D.N.Y. 2016) (Wolford, J.), because the ALJ did not factor in TIA with other impairments deemed to be severe at subsequent Steps. Therefore, plaintiff's motion on this ground is **granted**.

II.     Stale State Medication Opinion

A stale medical opinion cannot be relied upon if it was also either incomplete at the outset or the subsequent record showed deterioration in the claimant's condition not reflected in the now stale opinions, see Desnerck v. Berryhill, No. 15CV465, 2018 WL 3001009, at *3 (W.D.N.Y. Jan. 5, 2018) (Telesca, J.); Jones v. Comm'r, No. 10CV5831(RJD), 2012 WL 3637480, at *2 (E.D.N.Y. Aug. 22, 2012).

The ALJ gave great weight [R. 18] to Dr. Santarpia's December 2013 evaluation [R. 591] which noted plaintiff's reporting some short-term memory deficits and concentration difficulties [R. 592] and found her recent and remote memory skills were intact [R. 593]. Dr. Santarpia opined that plaintiff was able to maintain attention and concentration, learn new tasks [R. 593]. Plaintiff contends that this opinion was stale and predates her March and December 2014 MRIs showing TIA (Docket No. 13, Pl. Memo. at 16-17). Similarly, the ALJ relied upon another pre-MRI examination in November 2013 that found that she had benign forgetfulness [R. 13, 767].

With the remand ordered for consideration at Step Two and consideration of memory and speech deficits from TIA, the ALJ can reconsider the weight to be applied to Dr. Santarpia's old opinion bearing in mind plaintiff's subsequent MRIs.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion (Docket No. 9) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 13) for judgment on the pleadings is **denied**.

Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

    So Ordered.

                                       *s/Hugh B. Scott*
                                    Hon. Hugh B. Scott
                              United States Magistrate Judge

Buffalo, New York
April 17, 2019